UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> RODNEY BISHOP, <br><br> Defendant. | No. 6:09-CR-10-GFVT-HAI <br><br> RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Court, on referral (D.E. 455), considers reported violations of supervised release conditions by Defendant Rodney Bishop. District Judge Van Tatenhove entered a judgment against Defendant on November 17, 2010, for conspiracy to manufacture a mixture or substance containing methamphetamine, conspiracy to possess with the intent to distribute a mixture or substance containing methamphetamine, and possession of pseudoephedrine to manufacture methamphetamine. D.E. 342. Defendant was sentenced to 70 months of imprisonment followed by three years of supervised release. *Id*. Defendant began his supervised release term on March 6, 2014.

On August 26, 2014, the United States Probation Office ("USPO") issued a Supervised Release Violation Report. The Report charges, in Violation #1, a violation of Standard Condition #2, which provides that "[t]he defendant shall report to the probation office and shall submit a truthful and complete written report within the first five days of each month." Specifically, the Report states that Defendant did not submit his monthly reports for the months of May, June or July 2014. The Report also charges, in Violation #2, a violation of Standard Condition #6, which states that "[t]he defendant shall notify the probation officer at least ten

days prior to any change in residence or employment." The Report specifically alleges that Defendant consistently reported to the USPO that he was living with his father. On August 21, 2014, however, the USPO was advised by Defendant's father that Defendant had not been living at his father's residence for some time and that Defendant had been fired from his job. According to the Report, Defendant had not informed the USPO of the change in residence or lack of employment.

The Report further charges, in Violation #3, a violation of a Condition of Supervision that requires the Defendant to pay restitution in minimum monthly installments of $50. The Report states that Defendant "has not made a restitution payment since April 2014." In Violation #4, the Report charges Defendant with violating Standard Condition #7, which requires that "[t]he defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician." On August 22, 2014, the Report states that Defendant's urine tested positively for methamphetamine and suboxone (buprenorphine), but he denied use of drugs when confronted with the results. However, on a subsequent home visit Defendant admitted to the use of methamphetamine and suboxone (buprenorphine). The Report reasons that, as methamphetamine and suboxone are controlled substances, and Defendant has prior drug convictions, pursuant to Sixth Circuit case law holding that the use of a controlled substance is the equivalent of possessing the controlled substance, possession of either drug constitutes a violation of 21 U.S.C. § 844(a), a Class E Felony. This conduct forms the basis of Violation #5, a violation of the Supervised Release Condition requiring Defendant to not commit another federal, state or local crime.

The Court conducted an initial appearance pursuant to Rule 32.1 on September 3, 2014, and set a final hearing following a knowing, voluntary and intelligent waiver of the right to a preliminary hearing. D.E. 455. At the initial appearance, the United States made an oral motion for interim detention, and Defendant did not object. *Id*. The Court found that detention was appropriate as Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

At the scheduled final hearing on September 11, 2014, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 459. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the charged violations. *Id*. Further, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations, as described in the Report. *Id.* In the Supervised Release context, the Sixth Circuit treats controlled substance use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violations #1–5 under the standard of § 3583(e). The parties disputed the proper sentence for Defendant's violations of his release conditions.

Counsel for the United States requested a substantial term of imprisonment based upon the factors listed in 18 U.S.C. § 3553. Relying on Defendant's criminal history, danger to the public and Defendant's lack of respect for the law, Counsel for the United States advocated for a 16 month sentence followed by a period of supervised release for three years.

Defense counsel compared Defendant's range to hypothetical Guidelines ranges that could apply if the underlying conduct that caused the violation was treated as a new criminal offense and subject to the Guidelines amendments to be effective on November 1, 2014. This analogy had low base offense levels and therefore had a significantly shorter sentencing range

than provided by the Revocation Table in Chapter 7 of the Guidelines. Further, defense counsel argued that by stipulating to the charged violations and the underlying conduct, Defendant should receive credit for acceptance of responsibility for his actions. Defense counsel requested a sentence of thirty days followed by a period of supervised release for three years, to include increased drug testing and inpatient substance abuse treatment. As the hearing developed, defense counsel added a request for placement in a halfway house to provide transitional stability to Defendant upon release from prison.

The Court has evaluated the entire record, including the Supervised Release Violation Report and accompanying documents, and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offenses of the conviction. Defendant's convictions pursuant to 21 U.S.C. § 846 and § 841, with penalties pursuant to § 841(b)(1)(C), were Class C felonies. *See* 21 U.S.C. § 841; 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is two years of imprisonment. 18 U.S.C. § 3583(e)(3). The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438–39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1, #2, #3 and

#4, and a Grade B violation with respect to Violation #5. Given Defendant's criminal history category of IV (the category at the time of the conviction in this District) and a Grade B violation, *see* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is 12 to 18 months.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of § 3583(g)(1). *See United States v. Metcalf*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was…warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C § 3583(d)"). Defendant did not argue for the application of this exception, and it is not supported by this record.

The nature and circumstances of Defendant's underlying conviction are very serious. While Defendant did not return to dealing drugs while on supervision, he has resumed using drugs, and when he is using drugs, his history shows an increased likelihood of dangerous

criminal conduct. Further, this case illustrates many of the societal harms attendant to drug trafficking. The underlying offense conduct in this case shows the realization of that risk in the form of intoxicated driving, use of weapons, theft, involvement of children as "lookouts" to protect wrongdoing, and threats against potential witnesses. This risk of harm is clearly not only to himself, but to those around him, and the public at large.

Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public are significant drivers in the Court's analysis that all point to one primary goal: getting Defendant to remain clean. If Defendant can remain clean, he will be able to put his criminal history behind him and become a productive member of the community. However, if Defendant is unable to do this, as his past as shown, he will remain highly dangerous to himself, those around him, and the public.

Substance abuse treatment is needed, but has not been successful in the past so as to eliminate the need for a significant prison term. While in state custody in 2008, Defendant failed to complete a court ordered inpatient drug treatment program. He also failed to complete the Bureau of Prisons Residential Drug Abuse Program ("RDAP") while incarcerated pursuant to the Judgment in this case. RDAP was Defendant's best chance to learn new behaviors and skills to remain clean.

The need to avoid unwarranted sentence disparities among defendants with similar records who have committed similar violations is addressed by the recommendation of a sentence within Defendant's United States Sentencing Guidelines Manual Range.

The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the

defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e).

Defendant has breached the Court's trust in a significant and particularly worrisome manner. He has a severe addiction and it is particularly troubling to the Court that the Defendant returned to drugs so quickly after his release from prison. All five violations are the direct result of drug use and were committed within six months of Defendant's commencement of supervision. Defendant's sentence for the underlying offense of seventy months did not sufficiently lead to better decision making. This sentence came after Judge Van Tatenhove departed downward from Defendant's Guidelines range of 84 to 105 months, which could support an upward departure, upon revocation, pursuant to an Application Note 4 to § 7B1.4. Defendant has admitted that he has a problem with drugs which is a commendable first step. However, given Defendant's lengthy criminal history, this is not enough. It is clear that Defendant needs to find the inner strength to overcome his severe addiction before any outside assistance will be able to render any substantial effects.

A sentence of 14 months is below the middle of the Guidelines range so as to credit Defendant's acceptance of responsibility for the violations as urged by defense counsel. For the reasons stated above, the Court finds 14 months of incarceration is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). The Court rejects the request for placement in a halfway house so as to reduce his 14 month term as any lower prison term is not sufficient, in this Court's view, to protect the public and deter criminal conduct. Similarly, defense counsel's request for a sentence of just thirty days

does not sufficiently address these factors. Nor can the Court justify such a sentence under *United States v. Johnson*, 640 F.3d 195 (6th Cir. 2011), which requires a sufficiently compelling reason to vary from the Guidelines range and a specific reason for doing so.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Defendant's conviction under 21 U.S.C. § 846, with penalties described in 21 U.S.C. § 841, carried no maximum term of supervised release. Under section 3583(h), there is no maximum here either. 18 U.S.C. § 3583(h). The Court recommends that, because Defendant is clearly in need of extended close supervision, a term of 36 months of supervised release is necessary.

Based on the foregoing, the Court **RECOMMENDS** revocation, a term of imprisonment of 14 months, and 36 months of supervised release to follow under the conditions originally imposed by Judge Van Tatenhove. Further, the Court recommends that the Defendant be housed in the facility nearest his home for which he qualifies.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended

decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 14th day of October, 2014.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge