UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>RODNEY BISHOP,<br><br>    Defendant. | No. 6:09-CR-10-GFVT-HAI<br><br>RECOMMENDED DISPOSITION |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Van Tatenhove (D.E. 526), the Court considers reported violations of supervised release conditions by Defendant Rodney Bishop. This is his fourth revocation.

**I.**

Judge Van Tatenhove entered a judgment against Defendant on November 17, 2010, for conspiracy to manufacture a mixture or substance containing methamphetamine, conspiracy to possess with the intent to distribute a mixture or substance containing methamphetamine, and possession of pseudoephedrine to manufacture methamphetamine. D.E. 342. Defendant was sentenced to seventy months of imprisonment on each count to run concurrently, followed by three years of supervised release on each count to run concurrently. *Id*. Defendant began his initial term of supervised release on March 6, 2014.

In November 2014, Defendant's release was revoked for failing to submit monthly reports to the United States Probation Office ("USPO"), failing to notify the USPO of a change in residence and employment, failing to pay restitution, using methamphetamine, and committing another federal, state, or local crime based on his drug use. Defendant stipulated to the

violations and was sentenced to fourteen months of imprisonment plus three years of supervised release. D.E. 464, 466, 467. Defendant began his second term of supervised release on September 4, 2015.

Defendant was arrested in November 2015 and revoked again in April 2016 for using methamphetamine and committing another federal, state, or local crime based on his drug use. Defendant stipulated to both violations and was sentenced to seventeen months of imprisonment and supervised release to expire on September 3, 2018. D.E. 486, 489, 490. Two special conditions were added. One required him to immediately enroll in, and complete, a long-term inpatient substance abuse treatment program, and the other set a status conference before the Court to assess Defendant's progress and evaluate early termination of his term of supervised release. D.E. 490. Defendant was released on January 27, 2017, to begin service of his third term of supervised release.

On February 7, 2017, Defendant enrolled in a ninety-day inpatient treatment program, and successfully completed it on May 7, 2017. The Court was notified of his successful completion and scheduled a status conference for July 11, 2017. D.E. 495. However, on that day, the USPO notified the Court of new violations. Defendant's release was revoked a third time in August 2017 for using methamphetamine, committing the crime of methamphetamine possession, failing to truthfully answer questions by the probation officer, and failure to submit to drug testing. He was sentenced to 24 months of imprisonment, to be followed by one year of supervised release. D.E. 504, 507, 508. A condition was added that a status conference be held after six months of successful supervised release to discuss the possibility of early termination. D.E. 508 at 5.

Defendant was most recently released from prison on April 5, 2019. He reported to the Probation Office that same day and submitted a urine specimen that tested positive for methamphetamine.

## II.

On April 10, 2019, the USPO issued a Supervised Release Violation Report ("the Report") that initiated this revocation. The Report charges three violations. According to the Report:

> On April 9, 2019, the defendant reported to the U.S. Probation Office in London, following his release from the Bureau of Prisons on April 5, 2019. This Officer requested a urine specimen from the defendant for drug testing purposes. While the defendant was attempting to produce the urine specimen, he positioned himself where this Officer could not properly observe the specimen, and he was instructed to stand directly in front of the toilet. The defendant failed to comply, and this Officer instructed him a second time to stand in front of the toilet, which he again failed to do. This Officer subsequently observed the defendant attempting to hide an object in his underwear, and he was directed to remove the object from his person. The defendant eventually removed from his underwear a small plastic bottle, with a temperature strip, containing what appeared to be urine. The defendant indicated he smoked methamphetamine on the night of April 5, 2019, and he tampered with the drug test because he thought he may still be positive. The defendant advised he could not produce a urine specimen at that time. The defendant subsequently initialed and signed a Positive Urinalysis Admission Report admitting to the use of methamphetamine on April 5, 2019. He eventually produced a urine specimen which tested positive for the presence of amphetamine and methamphetamine via instant testing device.

The Report charges, in Violation #1, a violation of the condition requiring that Defendant refrain from any unlawful use of a controlled substance. Based on the above narrative, this violation is based on Defendant's admitted use of methamphetamine. This is a Grade C violation.

Violation #2 charges a violation of the conditions requiring that Defendant not commit another federal, state, or local crime and that he not unlawfully possess a controlled substance.

3

Violation #2 alleges that, due to Defendant's prior drug conviction and with the Sixth Circuit's ruling that use is the equivalent of possession, "simple possession of methamphetamine constitutes conduct in violation of 21 U.S.C. § 844(a), a Class E Felony." This is a Grade B violation.

Violation #3 charges a violation of the condition requiring that Defendant not obstruct or attempt to obstruct or tamper with the efficiency and accuracy of any drug testing, based on Defendant's apparent attempt to avoid providing his own fresh urine. This is a Grade C violation.

### III.

On April 16, 2019, the undersigned conducted an initial appearance pursuant to Rule 32.1, and set a final hearing following a knowing, voluntary and intelligent waiver of the right to a preliminary hearing. D.E. 529. The United States made an oral motion for interim detention, and Defendant requested release. *Id*. The Court found that detention was appropriate as Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id*.

At the final hearing on April 30, 2019, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 530. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all three charged violations. *Id*. He admitted using methamphetamine the day of his release from prison and attempting to tamper with the drug test. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations, as described in the Report. The United States thus established all three violations under the standard of § 3583(e).

### IV.

The Court has evaluated the entire record, the Report and accompanying documents, and the sentencing materials from the underlying judgment in the District. Additionally, the Court has considered all the section 3553 factors imported in the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to the Class C felonies of conspiracy to manufacture a mixture of substance containing methamphetamine, conspiracy to possess with intent to distribute a mixture of substance containing methamphetamine, and possession of pseudophedrine to manufacture methamphetamine. *See* 18 U.S.C. §§ 841(a)(1); 841(c)(2); 846; 3559(a)(3). Defendant's conviction carries a twenty-four month maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3). Pursuant to 18 U.S.C. § 3583(h) and 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that may be re-imposed. The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct in Violations #1 and #3, qualify as Grade C violations. His admitted conduct in Violation #2 qualifies as a Grade B violation. Given Defendant's criminal history category of IV (the category at the time of the

conviction in this District) and a Grade B violation,[1] Defendant's Range under the Revocation Table of Chapter 7 is 12 to 18 months. U.S.S.G. § 7B1.4(a).

## V.

At the April 30 final hearing, the parties argued for drastically different penalties. The government argued for revocation with the statutory maximum twenty-four months of imprisonment, with no supervised release to follow. Defendant argued for revocation with a sentence of time served, followed by no additional term of supervised release. The parties agreed that additional supervised release would not be effective in rehabilitating Defendant or deterring additional criminal conduct. The defense argued for leniency in light of Defendant's severe drug addiction and the amount of time he has already spent in prison. The government argued for a harsh sentence based largely on Defendant's history of failure to comply with his terms of supervision. The Court notes that Defendant was sentenced to 70 months on the underlying conviction and has spent 55 months in prison connected to his past revocations. In total, Defendant has been out on supervised release for 21 months.

The government noted that recommending no additional supervision was difficult because of the benefits of being on paper. This was a close call. But, this being Defendant's fourth revocation, supervision has not worked. Adding more would be a waste of resources.

Meth is dangerous, the government argued, and Defendant's history shows he is dangerous when he uses meth. Here, he used meth the day he left custody, which indicates planning. Then, he attempted to execute a plan to trick the probation officer. He showed "complete disregard for the concept of supervised release." As far as violations for meth use go,

---

[1] *See* U.S.S.G. § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

6

this instance was "on the aggravated end." Not only does Defendant have a well-documented history of meth abuse, methamphetamine is also connecting to the underlying offense. These facts pointed to a serious breach of the Court's trust and a compelling need for deterrence. Because the government recommended no additional supervised release, it suggested a heavy incarceration penalty on the front end. Because Defendant has performed poorly on supervised release, the government argued, a long prison sentence is the best way to protect the public.

The defense argued that Defendant is simply a meth addict, and there is no point in punishing him further when he cannot control his addiction. Meth was involved in each of his revocations. He is one of millions of meth addicts. Yet, because of his circumstances he has received a "historical" level of punishment while most users are not punished at all. The defense also argued that the breach of the Court's trust was not particularly serious because there was nothing like trafficking or violence. Possessing a drug, by itself, is not serious. The defense admitted that the tampering charge aggravated the meth use and admitted that Defendant had received inpatient treatment (which was something of a break). But overall, Defendant had been treated harshly by the system and needed to be let go. "We've punished this guy to death." The defense therefore requested a sentence of time served, and stated that Defendant's father had arranged for a bed at Chad's Hope for a one-year inpatient treatment program if Defendant was released that day.

Defendant addressed the Court. He said, "I've got a drug problem." He said he is "not so bad," but he has an addiction to meth and wishes he had never "looked at the stuff." He asked to be sent to Chad's Hope instead of prison. In prison, he said, he is surrounded by the drug he hates.

At the end of the April 30 final hearing, the Court took the penalty recommendations under advisement. The hearing was reconvened on May 7, 2019, where the Court announced its recommended sentence of twelve months and one day of incarceration, with no supervised release to follow.

## VI.

Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the section 3583(e) analysis, as well as the Guidelines Range.

The Court first considers the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2001) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was convicted of a series of dangerous drug trafficking offenses, including conspiracy to manufacture a mixture or substance containing methamphetamine, conspiracy to possess with the intent to distribute a mixture or substance containing methamphetamine, and possession of pseudoephedrine to manufacture methamphetamine. The underlying conspiracy to distribute methamphetamine was exceptionally dangerous and involved weapons, theft, use of children as "lookouts," and threats against potential witnesses. As the parties discussed, one person was accidentally shot while meth was being cooked. Defendant's continued abuse of methamphetamine creates the risk that he will fall back into drug trafficking.

The Court next considers Defendant's history and characteristics, the need to deter criminal conduct, and the need to protect the public. Defendant has an extensive criminal history

8

involving methamphetamine abuse and dangerous crimes such as driving under the influence, drug trafficking, and theft. Additionally, Defendant has violated the conditions of his supervised release four times by using methamphetamine in a relatively short period of time. Methamphetamine is a dangerous drug that is harming the community. Defendant's continued abuse of methamphetamine and his deception creates a strong risk that he will engage in future criminal behavior and threaten public safety. Accordingly, there is a strong need to deter criminal conduct and protect the public in this case.

The Court must also consider the need to provide Defendant with education, training, and treatment. Defendant has had the benefit of both outpatient and inpatient rehabilitation but continues to abuse methamphetamine. Despite his testimony that he hates methamphetamine and hopes to enroll in Chad's Hope, the Court does not have basis to believe further treatment or training would be effective at this point. Defendant will be free to pursue additional treatment on his own after his release, and the Court encourages him to do so.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Contrary to the argument of the defense, Defendant's breach of the Court's trust in this case is significant. Few cases rack up four revocations. Most supervisees complete their supervision with no revocations. And many supervisees are drug addicts. Defendant's violation conduct is also worsened by his attempt to tamper with the drug test. That deception toward the USPO is intolerable. A time-served sentence is not appropriate under these circumstances.

Another factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Last time, Defendant was given the statutory maximum sentence. But this time, a sentence within the Guidelines Range of 12 to 18 months is adequate to satisfy the sentencing factors. Defendant is not a regular addict. If he was, he would have responded more appropriately to his prior punishments and treatment. He has a severe problem and a history of creating danger while using drugs. He presents a risk of returning to trafficking. But because he is not compliant with supervision, the only effective way to protect the public is through incarceration. Defendant has served a lot of time, although each sentence was appropriately imposed. The Court has no reason to believe a statutory maximum sentence would be more effective at transforming Defendant into a law-abiding citizen than a within-Guidelines sentence.

The purpose of the recommended sentence of twelve months and one day is that it provides some incentive for Defendant to exercise self-control. If he follows the rules in prison, he can accumulate good-time credit and get out earlier. The Court wants to give him some sort of hope, some light at the end of the tunnel. He needs to know that the Court sees the value in him and believes that he can one day live drug-free.

For the reasons discussed above, the Court finds this penalty is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). There is no maximum term of supervised release that may be re-imposed given Defendant's underlying convictions. *See* 18 U.S.C. §§ 841(b)(1)(C); 846;

3583(h). Last time, the Court struggled with whether to re-impose supervised release. More supervision was recommended "for the sole reason of protecting the public from Defendant's dangerous behavior when he is abusing methamphetamine." D.E. 504 at 11. This reasoning failed. So, as argued by both parties, no new supervision is recommended.

Based upon the foregoing, the Court **RECOMMENDS**:

1. That, based on his stipulation, Defendant be found guilty of all three violations.

2. Revocation with a term of twelve months and one day of imprisonment and no supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **fourteen days** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Van Tatenhove's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 9th day of May, 2019.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge